No. 24-5769

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

EARL CHILDS,

*Plaintiff-Appellant,*

v.

H. GASCA, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:21-cv-9466
District Judge Jeffrey S. White

_____

**APPELLANT'S OPENING BRIEF**

_____

Samuel Weiss
Rights Behind Bars
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
202-455-4399
samuel@rightsbehindbars.org

*Attorney for Plaintiff-Appellant Earl
Childs*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES .................................................................... ii

JURISDICTIONAL STATEMENT ........................................................ 1

ISSUES PRESENTED ............................................................................ 1

STANDARD OF REVIEW ..................................................................... 5

SUMMARY OF THE ARGUMENT ...................................................... 6

ARGUMENT ........................................................................................... 7

   I.   The District Court Erred When It Held That Childs Was Obligated to Show That He Was Treated Differently Than Non-Disabled Prisoners. ........................ 7

   II.  No Alternative Basis Exists for This Court to Affirm................................. 13

CONCLUSION ........................................................................................ 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.G. v. Paradise Valley Unified Sch. Dist. No 69,*
  815 F.3d 1195 (9th Cir. 2016) ........................................................... 7

*Armstrong v. Schwarzenegger,*
  622 F.3d 1058 (9th Cir. 2010) ......................................................... 11

*Baughman v. Walt Disney World Co.,*
  685 F.3d 1131 (9th Cir. 2012) .................................................... 12, 13

*Bonin v. Calderon,*
  59 F.3d 815 (9th Cir. 1995) ............................................................. 16

*Buckingham v. United States,*
  998 F.2d 735 (9th Cir. 1993) ............................................................. 9

*Byrd v. Maricopa Cnty. Bd. of Supervisors,*
  845 F.3d 919 (9th Cir. 2017) ............................................................. 6

*Chapman v. Pier 1 Imports, Inc.,*
  631 F.3d 939 (9th Cir. 2011) ........................................................ 8, 12

*Cohen v. City of Culver City,*
  754 F.3d 690 (9th Cir. 2014) ........................................................ 8, 12

*Coniston Corp. v. Vill. of Hoffman,*
  844 F.2d 461 (7th Cir. 1988) ........................................................... 15

*Diaz v. Perez,*
  564 F. App'x 319 (9th Cir. 2014) ...................................................... 6

*Dunlap v. Ass'n of Bay Area Gov'ts,*
  996 F.Supp. 962 (N.D. Cal. 1998) ..................................................... 8

*Duvall v. Cnty. of Kitsap,*
  260 F.3d 1124 (9th Cir. 2001) ................................................ 4, 13, 14

*Hamer v. Jones,*
  364 F. App'x 119 (5th Cir. 2010) ...................................................... 6

*Harnage v. Lightner,*
  916 F.3d 138 (2d Cir. 2019) .............................................................. 6

*Kiman v. N.H. Dep't of Corr.,*
  451 F.3d 274 (1st Cir. 2006) ............................................................. 9

*McGary v. City of Portland,*
  386 F.3d 1259 (9th Cir. 2004) ...................................................... 8, 11

*Miranda B. v. Kitzhaber,*
  328 F.3d 1181 (9th Cir. 2003) ......................................................... 15

*Nordstrom v. Ryan*,
762 F.3d 903 (9th Cir. 2014) ................................................... 6

*Pa Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998) ................................................................ 11

*Pierce v. Cnty. of Orange*,
526 F.3d 1190 (9th Cir. 2008) ................................................. 9

*Resnick v. Hayes*,
213 F.3d 443 (9th Cir. 2000) ................................................... 6

Tennessee v. Lane,
541 U.S. 509 (2004) ......................................................... 12, 13

*United States v. Georgia*,
546 U.S. 151 (2006) ................................................................ 11

*Vinson v. Thomas*,
288 F.3d 1145 (9th Cir. 2002) ................................................. 9

*Wheeler v. Wexford Health Sources, Inc.*,
689 F.3d 680 (7th Cir. 2012) ................................................... 6

*Wilhelm v. Rotman*,
680 F.3d 1113 (9th Cir. 2012) ................................................. 6

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) ................................................................. 15

*Williams v. Koenig*,
2024 WL 1477067 (9th Cir. Apr. 5, 2024) ............................... 15

*Wong v. Regents of the Univ. of Cal.*,
192 F.3d 807 (9th Cir. 1999) ................................................... 9

*Young v. Nickols*,
413 F.3d 416 (4th Cir. 2005) ................................................. 15

*Zivkovic v. S. Cal. Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) ................................................. 8

Statutes

28 U.S.C. § 1291 .......................................................................... 1
28 U.S.C. § 1331 .......................................................................... 1
28 U.S.C. § 1915A ................................................................... 5, 6
29 U.S.C. § 794 ....................................................................... 1, 4
42 U.S.C. § 12101 ........................................................................ 1
U.S. Const. amend. VIII .............................................................. 1

Rules

Fed. R. App. P. 4...................................................................... 1

Fed. R. App. P. 32.................................................................... 1

Fed. R. Civ. P. 15.................................................................... 16

Regulations

28 C.F.R. § 35.130................................................................. 6, 7

## JURISDICTIONAL STATEMENT

Childs appeals the district court's entry of judgment to Defendants on August 23, 2024, which rendered final its concomitant grant of summary judgment on some of his claims as well as its earlier dismissal of the claims at issue in this appeal. The district court had jurisdiction under 28 U.S.C. § 1331. Childs brought claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, the Rehabilitation Act, 29 U.S.C. § 794(a), and the Eighth Amendment of the United States Constitution. U.S. Const. amend. VIII. Childs filed a timely notice of appeal on September 20, 2024. ER-52; *see* Fed. R. App. P. 4(a). This Court has jurisdiction over the appeal of the district court's final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.     Whether the district court erred in holding that Childs was obligated to allege differential treatment to state a claim under the ADA.

II.     Whether There Exists an Alternative Basis for Affirmance.

## STATEMENT OF THE CASE

Earl Childs is a 43-year-old man who is incarcerated in the California Department of Corrections and Rehabilitation. In May 2021, he was incarcerated at the psychiatric prison hospital at Salinas Valley State Prison. ER-36. Defendants—

H. Gasca, M. Coronado-Rodriguez, and O. Aragon—are correctional staff at the prison. ER-35–36.

Because Childs had a physical impairment, the prison granted Childs a medical right to use a cane. ER-34. The facility also provided him a "front-cuff" chrono, a term that refers to an alert to staff about people with disabilities who need to be handcuffed in the front with waist restraints instead of the back of their bodies. *Id.* The prison also provided Childs an ADA mobility vest. ER-37. The vest showed staff that he could not ambulate without a cane and that he could not safely get down on the ground. *Id.* He also wore special sunglasses to protect his right eye, on which he had recently had corneal transplant surgery. *Id.*

Gasca was familiar with Childs and his disabilities. ER-45. He had cuffed Childs numerous times with waist restraints. *Id.* He also knew that Childs needed a cane to ambulate. *Id.* Aragon similarly knew that Childs used a cane and that he had a chrono to be cuffed with waist restraints. ER-33.

On Tuesday May 25, 2021, a call went out over the intercom at roughly 11:30 in the morning, alerting the people confined that the yard was open. *Id.* Childs put on this ADA vest, put on sunglasses to protect his right eye after a recent corneal transplant surgery, and with his cane, left his Psychiatric Inpatient Program cell. *Id.* Childs entered the yard. *Id.*

2

Gasca was the yard supervisor that day. ER-38. Gasca was supposed to sit in a chair in front of the yard gate and monitor the yard for confined people's safety. *Id.* Gasca, instead of assuming his duty, closed the gate behind Childs and left the area. *Id.*

In the yard, another incarcerated person named Brown, whom Childs had never seen before, approached Childs. ER-38, 44. Brown punched Childs in the face and torso. ER-38. Childs grabbed onto Brown's arm and attempted to restrain him. ER-38–39. For at least the following two minutes Childs and Nguyen—another imprisoned person witnessing the attack—called out to Gasca and other prison staff for help. *Id.* None came. *Id.* Childs and Brown continued to struggle. *Id.* Then, after Childs warded off Brown and walked away, correctional officers rushed into the yard, and Gasca threw a chemical agent grenade at Childs. ER-39–40.

Gasca, with officer M. Coronado Rodriquez and Sergeant O. Aragon watching, ordered Childs to get on the ground. ER-40. Childs explained that he could not do so because of his "mobility issues." *Id.* Childs pointed to his cane. *Id.* "I am ADA," he said. *Id.* Gasca grabbed his wrists with unnecessary force and Childs ended up on the ground. *Id.* Childs told Gasca again that he was not resisting, that Gasca was hurting him, and that he had a medical order to be cuffed in the front. Gasca responded "I don't care" and continued cuffing him from behind. *Id.*

3

Gasca ordered Childs to stand up. *Id.* Childs stated that he could not do that on his own; he asked for his cane. *Id.* Gasca jerked Childs up by his arm instead. *Id.* Unsteady on his feet, Childs slipped from Gasca's grip and fell down the ground, injuring his knee. ER-41.

Gasca and Coronado then assisted Childs to his feet. They made him walk without his cane to a medical treatment room. *Id.*

Childs's injuries from this incident include permanent scarring of his legs, face, hand, and knees; abrasions, bleeding, bruising, swelling on his knee; bruising and swelling of his hand; bleeding of his leg; and a black eye requiring care from an eye specialist. ER-42–43. The injuries have stayed with him. He experiences continued dizziness, pain when walking, frequent headaches and nightmares. ER-43. He suffers from Post Traumatic Stress Disorder and overwhelming anxiety. *Id.* He lives in fear of future abuse, assault, intimidation, and harassment. *Id.*

Childs exhausted his administrative remedies. ER-30–31. He then filed a *pro se* complaint alleging violations of the Americans with Disabilities Act (ADA)[1] and his Constitutional rights by several government officials in the Northern District of California. ER-13. The court reviewed the complaint under the Prison Litigation

---

[1] Childs also brought claims under the Rehabilitation Act, 29 U.S.C. § 794(a). As this Court interprets the statutes co-extensively in most respects and their differences are not relevant to this appeal, Appellant will use the term ADA to refer to both claims. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Reform Act's provision mandating pre-service screening for frivolity. ER-16. As to his ADA claim, the court held first that Childs had erred by bringing suit against individual prison officials but that he could amend to replace them with government entities. ER-22. The court then analyzed the merits of his ADA claim in a single sentence: "Plaintiff does not allege that he was treated differently than similarly situated non-disabled inmates and he does not allege that he was excluded from participation in a prison program or service because of his disability." ER-22–23. The court then gave him leave to amend his complaint "if he [could] in good faith" fix the error identified above by showing that he was treated differently from non-disabled prisoners. ER-23.

The screening opinion did allow some of his constitutional claims to go forward. ER-22. The court later granted summary judgment to all Defendants, holding that Childs had not provided sufficient evidence to create a genuine dispute of material fact on whether Defendants had violated his constitutional rights. ER-12. Childs timely appealed. ER-52.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's screening-stage dismissal of a prisoner's complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1118 (9th Cir. 2012). "Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all

allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Courts "must reverse a district court's dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated." *See Harnage v. Lightner*, 916 F.3d 138, 140 (2d Cir. 2019) (emphases added).

"The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). As such, the bar for surviving screening under § 1915A is low. This Court has repeatedly described § 1915A's screening requirement as a "low threshold." *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 924 (9th Cir. 2017) (same); *Diaz v. Perez*, 564 F. App'x 319, 320 (9th Cir. 2014) (same). Other circuits have called it an "extremely low threshold." *Hamer v. Jones*, 364 F. App'x 119, 125 (5th Cir. 2010).

## SUMMARY OF THE ARGUMENT

Public entities, such as prisons, are required to accommodate people with disabilities. 28 C.F.R. § 35.130(b)(7)(i). The district court therefore erred in holding that Childs was obligated to allege disparate treatment to state a claim under the ADA. Even if the district court meant to hold that Childs had inadequately alleged

exclusion from a prison service, this would be error because he alleged a lack of meaningful access to prison services as he only accessed him by undergoing humiliation and pain.

In addition, there is no alternative basis to uphold the district court's ruling. Childs substantiated his claim for monetary damages by sufficiently pleading that Defendants were deliberately indifferent. Furthermore, since it would have been futile for Childs to amend his complaint, he was not required to do so as a *pro se* plaintiff. This Court should therefore reverse and remand for further proceedings.

## ARGUMENT

### I. The District Court Erred When It Held That Childs Was Obligated to Show That He Was Treated Differently Than Non-Disabled Prisoners.

A plaintiff establishes "prohibited discrimination under … Title II [of the ADA] by showing that a public entity denied [them] a 'reasonable accommodation' necessary to achieve meaningful access to" an entity's programs, services, or activities. *A.G. v. Paradise Valley Unified Sch. Dist. No 69*, 815 F.3d 1195, 1206 (9th Cir. 2016); 28 C.F.R. § 35.130(b)(7)(i) (requiring public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability").

Failure to accommodate is a kind of discrimination that, perhaps counterintuitively, is marked not by different treatment, but rather by similar

treatment where difference was required. Motivating the ADA's attention to this kind of discrimination is its recognition that "[e]ven facially neutral government actions that apply equally to disabled and nondisabled persons" may in fact "unduly burden[] disabled persons." *Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) (citations omitted); *see also Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 944–45 (9th Cir. 2011) (explaining that the kind of discrimination that often confronts disabled people is not animus, but rather a "subtle" discrimination arising from "thoughtlessness and indifference"). "The purpose of the ADA's reasonable accommodation requirement is to guard against the facade of 'equal treatment' when particular accommodations are necessary to level the playing field." *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004). As a result, the ADA creates "an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation'"—that is, to treat disabled people differently. *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F.Supp. 962, 965 (N.D. Cal. 1998).

Of course, the ADA does not create liability for all failures to accommodate but rather only those where an accommodation is reasonable. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). Whether a particular accommodation is reasonable "depends on the individual circumstances of each case" and "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations" that individual may require.

8

*Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999). A plaintiff bears "the initial burden of producing evidence that a reasonable accommodation was possible." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). "Thereafter, the burden shift[s] to the [defendants] to produce rebuttal evidence that the requested accommodation was not reasonable." *Id.* at 1155; *see also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008). For example, defendants might show that an accommodation is not reasonable because it would "require a fundamental alteration or would produce an undue burden." *Pierce*, 526 F.3d at 1217. But "mere speculation that a suggested accommodation is not feasible" does not satisfy defendants' burden. *Wong*, 192 F.3d at 818 (*quoting Buckingham v. United* States, 998 F.2d 735, 740 (9th Cir. 1993)) (cleaned up).

Childs is substantially impaired in his ability to lie on the ground, stand up, be cuffed behind his back, and walk. ER-40–41. The prison had already determined that he was entitled to certain accommodations. ER-37, 40. On the day in question, Childs simply proposed the very accommodations to which the prison had already agreed: that he use his cane to ambulate to the medical area; that he be cuffed in the front rather than the back; and that he be not forced to lie on the ground or climb up from it without help. ER-40–41. These accommodations were eminently reasonable, as demonstrated by the fact that the prison itself already required them. ER-37, 40; *see Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 289 (1st Cir. 2006) (explaining that

defendants' failure to honor a cuffing pass demonstrated an unreasonable failure to accommodate because the prison itself "acknowledged the importance of this accommodation by issuing the front cuff pass"). He was nonetheless denied the accommodations for no apparent reason other than staff hostility. ER-40–41.

The district court's conclusion that "Plaintiff does not allege that he was treated differently than similarly-situated non-disabled inmates" suggests that the district court did not understand that Childs was making a failure to accommodate claim. ER-22. This seems particularly likely when combined with its later statement that only in amendment could Childs allege "that the prison discriminated against him on the basis of his 'disability.'" ER-23. As explained above, the district court was wrong. Just like a public courthouse that does not build a wheelchair ramp, a prison discriminates by reason of disability when it fails to reasonably accommodate prisoners with disabilities. Intentional mistreatment or disparate treatment towards those with disabilities is not required.

In the latter half of its one sentence analysis, the district court wrote that Childs "does not allege that he was excluded from participation in a prison program or service because of his disability." ER-22–23. By invoking causation, the district court seemed to continue its misunderstanding of failure to accommodate claims— people who fail to receive accommodations and therefore lack meaningful access to public services are denied "because of their disabilities," even if the government's

failure is inaction rather than action. "The district court's suggestion that *un*equal treatment is required to state a reasonable accommodation claim eviscerates this fundamental purpose of the ADA." *McGary*, 386 F.3d at 1267 (emphasis in original).

A more charitable reading, however, could conclude that the court understood that Childs brought a failure to accommodate claim but believed that Childs failed to identify a particular program or service that he lacked access to because of Defendants' failures in accommodation. This would be closer to the mark but nonetheless incorrect.

Two points of law are important in considering the court's error. First, in the unique context of prisons, in which public entities control virtually every facet of life, courts have held that the statutory term "programs, services, and activities" includes virtually all areas of prison life. *See, e.g.*, *Pa Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (listing medical services as fitting within the text of a prison service); *United States v. Georgia*, 546 U.S. 151 (2006) (listing "mobility" and "medical care" as "fundamentals" that likely fit within the text of the ADA); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) ("the fundamentals of life, such as …elementary mobility" inside a prison constitute a public entity's programs or services).

Second, people with disabilities are entitled to "meaningful access" to programs, services, and activities, not merely the physical possibility of access. The Supreme Court's paradigmatic Title II case, *Tennessee v. Lane*, illustrates this point well. 541 U.S. 509, 513 (2004). *Lane* involved plaintiffs with mobility impairments who had to crawl or be carried up flights of stairs to reach the second floor of a courthouse. *Id.* No party suggested that the plaintiffs had meaningful access to the courts even though they could physically reach them by risking injury and humiliation.

This Court emphasizes that the ADA guarantees people with disabilities not only access but "equal enjoyment" of the benefits that public entities offer. *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) (quoting *Chapman v. Pier 1 Imps. Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)) (explaining that the ADA guarantees "'disabled individuals' full and equal enjoyment' of public places and accommodations'" and that "a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons"). In the context of Title III, this Court has explained that the fact that a person with a disability "*can*" access a program, service, or activity is not enough to satisfy the ADA. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1134–35 (9th Cir. 2012) (emphasis in original). Such a narrow reading of the ADA:

> would require very few accommodations indeed. After all, a paraplegic *can* enter a courthouse by dragging himself up the front

12

steps, so lifts and ramps would not be 'necessary' … And no facility would be required to provide wheelchair-accessible doors or bathrooms, because disabled individuals could be carried in litters or on the backs of their friends. That's not the world we live in.

*Id.* (citing *Lane*, 541 U.S. at 513–14).

After Childs was attacked, he technically received the services of further protection from harm and medical care. ER-41. Like the plaintiffs in *Lane*, however, he was forced to endure pain and humiliation to receive them. ER-40–41. Staff cuffed him in the back in violation of a medical order even though that caused him pain. ER-40. Staff forced him down on the ground in violation of a medical order telling them not to do so. *Id.* Staff ordered him to stand up unassisted even though he was unable to do so and then jerked him up violently. ER-40–41. Their lack of care and his inability to access his cane caused him to fall out of their grip and fall back to the floor. ER-41. They then forced him, unsteady on his feet, to walk to medical treatment without his cane. *Id.* These all demonstrate a lack of meaningful access under the ADA. Therefore, if the district court's dismissal of Childs's claim was based on the failure to identify a service from which he was entirely excluded, this too was an incorrect interpretation of the ADA.

## II.  No Alternative Basis Exists for This Court to Affirm.

### a)  Deliberate indifference

To obtain monetary damages, a plaintiff in a Title II ADA case must demonstrate intentional discrimination. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124,

1138 (9th Cir. 2001). This Court has explained, however, that intentional discrimination does not require disparate treatment or discriminatory animus but instead "deliberate indifference." *Id.* at 1138–39. Defendants act with deliberate indifference when they both have "knowledge that a harm to a federally protected right is substantially likely, and [] fail[] to act upon that likelihood." *Id.*

The record is replete with Defendants' knowing disregard of Childs's reasonable accommodations. Childs was wearing an "ADA Mobility Impaired Vest," a bright neon notification[2] that he was, as the vest alerted, mobility impaired. ER-37. He was walking with a cane. *Id.* Defendant Gasca knew that Childs had mobility issues from their prior interactions. ER-45. He and other Defendants also knew that Childs had to be cuffed in the front.ER-33, 45-46 During the relevant incident, before each denial of accommodation Childs informed the correctional officers of his disability. ER-40. When ordered to the ground: "I [can]'t get down on the ground because of my mobility issues." *Id.* (simultaneously pointing to his cane). When Gasca ordered him to stand up and refused to give him his cane as aid: "I can't." *Id.* When Gasca grabbed his wrist and forced it behind his back: "I need… to be cuffed in front because of my medical chrono." *Id.* Gasca replied, "I don't

---

[2] *See ADA Vest*, Cal. Prison Indus. Auth.,
https://catalog.calpia.ca.gov/product/ADA-Vest/ [https://archive.ph/wtIS6] (last visited Jan. 6, 2025).

care." *Id.* This response was quintessential deliberate indifference in its knowing disregard of a disability accommodation.

### b) *Childs was not obligated to amend.*

The district court's screening order permitted Childs to amend "if he can in good faith allege that he is an individual with a disability under the federal statutes, that the prison discriminated against him on the basis of his 'disability,' and if he names the proper Defendants." ER-23. Childs was not obligated to do so. His failure to do so is therefore not an alternative basis for affirmance.

First, Childs did not err in naming Defendants in their official capacities rather than the public entities themselves. A "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187–88 (9th Cir. 2003) (holding the same in the context of Title II); *Williams v. Koenig*, No. 21-16092, 2024 WL 1477067 (9th Cir. Apr. 5, 2024) (same).

More importantly, amendment would have been futile. Childs could not have alleged that he was treated differently from non-disabled prisoners because he was not. *See Young v. Nickols*, 413 F.3d 416, 418 (4th Cir. 2005) ("[I]f the grounds of the dismissal make clear that no amendment could cure the [purported] defects in

15

the plaintiff's case, the order dismissing the complaint is final in fact" (quotation omitted)); *Coniston Corp. v. Vill. of Hoffman Ests.*, 844 F.2d 461 (7th Cir. 1988). The district court's legal error on this issue was impossible for this *pro se* plaintiff to plead around and he was not obligated to engage in futile amendment.[3]

## CONCLUSION

This Court should reverse and remand for further proceedings.

Date: January 6, 2025

/s/ *Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Earl Childs

---

[3] This is why, for example, even though Fed. R. Civ. P. 15(a)(2) provides for liberal amendment, this Court has held that district courts may ignore the strong public policy interests favoring amendment and disregard the multi-factor test and simply deny amendment when it is futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Futile amendments are a waste of judicial resources and the time of the parties.

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 3,751 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word with a Times New Roman 14-point font.

Date: January 6, 2025

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Aaron Eaton

# CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: January 6, 2025

*/s/ Samuel Weiss*
Samuel Weiss

Rights Behind Bars
416 Florida Avenue NW, #26152
Washington, DC 20001
Attorney for Appellant Earl Childs